IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

ECO RESOURCES, INC. and
SWWC SERVICES, INC.,                                                    PLAINTIFFS,

VS.                                                    CIVIL ACTION NO. 2:08CV232-P-S

CITY OF HORN LAKE,                                                      DEFENDANT.

## MEMORANDUM OPINION

These matters come before the court upon the City of Horn Lake's motion for summary judgment [27] and Eco Resources, Inc. and SWWC Services, Inc.'s cross-motion for summary judgment [33]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

On October 1, 2002 ECO Resources, Inc. ("ECO") entered into a contract with the City of Horn Lake titled Professional Service Contract for the Operation of the Water Treatment, Water Distribution, Waste Water Collection Systems and Meter Reading Services. This agreement provided for an initial term from October 1, 2002 to September 30, 2007.

On October 19, 2004 the parties executed Addendum C to the contract which extended the end of the term for 24 months from September 30, 2007 to September 30, 2009.

On July 1, 2005 a new Mayor and Board of Aldermen came into office for the City of Horn Lake. On September 19, 2006, the City voted to modify the agreement between itself and ECO by deleting certain lift stations from the contract.

On March 20, 2008 ECO assigned its contractual rights to SWWC Services, Inc. ("SWWC").

On September 19, 2008 the Board of Aldermen voted to cancel the contract with ECO and

SWWC, even though Addendum C entered agreed to on October 19, 2004 provided that the contract would not expire until September 29, 2009.

Less than a month later, ECO and SWWC filed the instant action on October 1, 2002. The Complaint seeks redress through 42 U.S.C. §1983 alleging that the vote cancelling the contract violates Art. 1, § 10 of the U.S. Constitution which provides in pertinent part: "No State shall ... pass any ... Law impairing the Obligation of Contracts...." as well as Art. 3, § 16 of the Mississippi Constitution of 1890. The Complaint also levies a claim for breach of contract and seeks specific performance in addition to declaratory and injunctive relief.

The City argues in its motion for summary judgment that all of the plaintiffs' claims should be dismissed because: (1) Mississippi common law provides that successor municipal boards are not bound by contracts that go beyond the term of the board that entered the contract; (2) the successor board was authorized to cancel the contract specifically by the Mississippi Public Purchase Law, Miss. Code Ann. § 31-7-13(n)(i); and (3) the plaintiffs' reliance on Miss. Code Ann. § 21-27-7 is misplaced since the 25-year contract provision applies only to contracts involving erection and maintenance of waterworks, not contracts involving only maintenance, nor does § 21-27-7 apply to sewage as is involved in the contract at issue.

In their response and cross-motion for summary judgment, the plaintiffs maintain that: (1) Miss. Code Ann. § 21-27-7 authorized the original board to agree to the term extension in Addendum C; (2) this extension agreement deferred October, November, and December 2004's payments in return for the extension which allowed the City to benefit from the bargain while the City's September 2008 vote to cancel the contract caused the plaintiffs to lose their benefit from the bargain; thus, the City is liable for breach of contract because it was acting in a proprietary capacity

2

in regard to the waterworks contract rather than in its sovereign capacity; (3) alternatively, the successor board ratified the extension when it agreed to modify it involving a different matter on September 16, 2006; and (4) the successor board's September 18, 2008 vote to void the contract violated the contracts clause of the U.S. and Mississippi Constitutions pursuant to *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983) and *Lipscomb v. Columbus Municipal Separate School District*, 269 F.3d 494 (5th Cir. 2001) because the cancellation was a substantial impairment of a contractual relationship and there was no public necessity or exigency.

In reply, the City counters that: (1) Miss. Code Ann. § 21-27-7 does not apply in this case and is trumped by § 31-7-13(n)(i), therefore, the original board's agreement to the 24-month extension in Addendum C was an *ultra vires* act; (2) the tort-law concept of proprietary/governmental analysis is inapplicable to a mere breach of contract issue pursuant to *PYCA v. Harrison County*, 81 F.3d 1412 (5th Cir. 1996); (3) the successor board did not ratify the extension by agreeing in September 16, 2006 to deleting certain lift stations from the contract as evidenced by the Mayor's July 1, 2005 letter stating in part that "[t]he deletion of said lift stations... shall in no way constitute or be construed as a ratification or approval of the aforementioned contract by the current Horn Lake Mayor and Board of Aldermen."

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*,

3

477 U.S. 317, 323 (1986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that

4

there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

## 2. Whether the City's Approval of Addendum C Was an *Ultra Vires* Act

The first issue arising in this case is whether the agreement to modify the subject contract with Addendum C by the then-Mayor and Board of Aldermen, which extended the original term of the contract from September 30, 2007 to September 30, 2009, was an *ultra vires* act, or beyond the power of the contracting municipal board.

As discussed above, the plaintiffs argue that such an extension is authorized by Miss. Code. Ann. §21-27-7 which provides:

> The governing authorities of municipalities shall have the power to erect, purchase, maintain and operate **waterworks**, and to regulate the same, to prescribe the rates at which water shall be supplied to the inhabitants, and to acquire by purchase, donation or condemnation, in the name of the municipality, suitable grounds, within or without the corporate limits, upon which to erect waterworks, and also the right-of-way to and from such works and the right-of-way for laying water pipes within the corporate limits, and from such waterworks to the municipality, and to extend such right-of-way from time to time. **The governing authorities shall have the power to contract with any person for the maintenance and operation of waterworks. Said authorities shall have the power to contract with any person**

5

> **for the erection *and* maintenance of waterworks for a term not exceeding twenty-five (25) years, fixing water rates in the contract subject to municipal regulations.** A contract for the erection or purchase of waterworks shall not, however, be entered into until submitted to a vote of the qualified electors and approved by a majority of those voting. A contract for maintenance under which the person who will perform such maintenance is wholly or partially responsible for fixing water rates shall not be entered into until submitted to a vote of the qualified electors and approved by a majority of those voting. It shall be unlawful for any municipally owned waterworks to supply water free of charge, or in any amount less than the fixed charges, to any person, firm or corporation, except as is expressly authorized by law.

Miss. Code Ann. § 21-27-1 (emphasis added).

The City argues that § 21-27-1 expressly limits the 25-year contract provision to instances where erection *and* maintenance is involved, not just where the party has been contracted to perform maintenance as in the present case. The City argues further that the Mississippi Public Purchase Law, Miss Code. Ann. § 31-7-13 provides that term contracts to provide waterworks maintenance of more than 24 months may be ratified or cancelled by municipal boards coming into power subsequent to the contracting board. More specifically, § 31-7-13 provides in pertinent part:

> **All** contracts for the purchase of commodities, equipment and public construction (including, but not limited to, repair and maintenance), may be let for periods of not more than sixty (60) months in advance, subject to applicable statutory provisions prohibiting the letting of contracts during specified periods near the end of terms of office. **Term contracts for a period exceeding twenty-four (24) months shall also be subject to ratification or cancellation by governing authority boards taking office subsequent to the governing authority board entering the contract**.

Miss. Code Ann. § 31-7-13(n)(i) (emphasis added).

In reply, the plaintiffs cite two Attorney General Opinions for the proposition that the purchasing laws found in § 31-7-13 do not apply to a water/sewer contract entered into pursuant to § 21-27-7. *See* Miss. Atty. Gen. Op. to Horan (February 12, 1993), 1993 WL 669111; Miss. Atty.

Gen. Op. to Snyder (November 27, 2000), 2000 WL 1899949.

However, the defendant correctly points out that contrary to these Attorney General Opinions, which do not carry the force of mandatory precedent, § 31-7-13(n)(i) expressly covers "**[a]ll** contracts for the purchase of commodities, equipment and public construction (including, but not limited to, repair and maintenance)," which necessarily includes the contract for water and sewage maintenance at issue. Furthermore, the Attorney General Opinions cited by the plaintiffs state that while an independent contractor does not have to comply with the purchasing laws when purchasing parts and commodities, the municipality must comply with § 31-7-13. In any event, neither of the Attorney General Opinions speak to whether a municipal board may bind successor boards by agreeing to contract terms in excess of 24 months.

The City is also correct that Mississippi common law provides that a governing municipal board does not have the authority to bind a municipality to a contract beyond the term of that board. *Biloxi Firefighters Association v. City of Biloxi*, 810 So.2d 589 (Miss. 2002) (citing *Edwards Hotel & City R. Co. v. City of Jackson*, 51 So.802 (Miss. 1910)); *Tullos v. Town of Magee*, 179 So. 557, 558 (Miss. 1938) ("[I]t is beyond the power of municipal officers to bind their successors in office in the exercise of their discretionary authority."). "The mayor and board of aldermen are the mere agents of the city, having power to bind the city only within the scope of authority delegated to them. If a city could be estopped on an *ultra vires* contract by its mere agents, there would be little force in charter restrictions on the power of the agents of the city to bind it, since they could be easily destroyed in this way." *Biloxi Firefighters Assoc.*, 810 So.2d at 592 (citing *Edwards*, 51 So. at 805). "Each mayor and board of aldermen cannot exercise full jurisdiction if predecessors may tie their hands in the matter of requiring to be done any matter which is comprehended in the

exercise of full jurisdiction." *Biloxi Firefighters Assoc.*, 810 So.2d at 592 (citing *Edwards*, 51 So. at 805).

Having considered the parties' arguments, the court concludes that the City's decision to modify the water and sewage maintenance contract with Addendum C was an *ultra vires* act in the sense that the contracting board could not legally agree to bind a successor board to the contract. This is because § 31-7-13(n)(i) limits a sitting board to bind its municipality to term maintenance contracts for no longer than 24 months and any term in excess of 24 months is subject to ratification or cancellation by a successor board. Here, the contracting board agreed on October 19, 2004 to extend the original term of the maintenance contract from October 1, 2002 to September 30, 2007 to October 1, 2002 to September 30, 2009. The period from the date of modification, October 19, 2004, to the new expiration date of September 30, 2009 was clearly in excess of 24 months pursuant to § 31-7-13. This conclusion is also clearly supported by the Mississippi Supreme Court's decisions in *Edwards Hotel & City R. Co. v. City of Jackson*, 51 So. 802 (Miss. 1910); *Tullos v. Town of Magee*, 179 So. 557, 558 (Miss. 1938); *Biloxi Firefighters Association v. City of Biloxi*, 810 So.2d 589 (Miss. 2002).

**3. Whether the City Ratified or Cancelled the Extension**

The next question is whether the City ratified or cancelled the maintenance contract extension pursuant to the express language of § 31-7-13(n)(i).

The plaintiffs argue that when the successor board voted to modify the maintenance contract on September 19, 2006 by deleting certain lift stations from the contract, the board therefore ratified the extension agreed to by the contracting board.

8

The defendant counters that in its minutes for its September 19, 2006 session, City administration authorized the new Mayor to execute a letter "to ECO Reources, Inc. regarding the deletion of lift stations from the professional services contract dated October 1, 2002...." Minutes, City of Horn Lake, Mississippi, Exhibit "E" to Complaint. The Mayor's September 19, 2006 letter was addressed to ECO and stated in paragraph two: "The deletion of said lift stations and reduction of the Base Service Fee shall in no way constitute or be construed as a ratification or approval of the aforementioned contract by the current Horn Lake Mayor and Board of Aldermen." September 19, 2006 Letter from Mayor Nat Baker to Mike McDaniel, ECO Resources, Exhibit "F" to Complaint. In his September 22, 2006 response letter to Mayor Baker, Mr. McDaniel of ECO Resources acknowledged receipt of the Mayor's letter and evidenced agreement to the primary requests contained in the Mayor's September 19, 2006 letter, namely, to delete certain lift stations from ECO's maintenance duties.

The court concludes that given the disclaimer in the Mayor's September 19, 2006 letter to ECO, the plaintiffs have failed to create a genuine issue of material fact establishing that the successor municipal board ratified the contracting board's agreement to extend the term of the subject maintenance contract.

Accordingly, pursuant to Miss. Code Ann. § 31-7-13(n)(i) and Mississippi common law discussed above, the court concludes that the voiding of the subject maintenance contract by the successor municipal board of the City of Horn Lake did not offend Mississippi law.

**4. Whether the Voiding of the Contract violated the Contracts Clause**

Though the voiding of the contract did not violate Mississippi law, the next question is whether it violated Contracts Clause, Art. 1, § 10 of the U.S. Constitution which provides in

9

pertinent part: "[N]o State shall ... pass any ... Law impairing the Obligation of Contracts."[1]

Citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983) and *Lipscomb v. Columbus Municipal Separate School District*, 269 F.3d 494 (5th Cir. 2001), the plaintiffs argue that the City has attempted to legislate itself out of the maintenance contract in violation of the Contracts Clause.

In *Lipscomb*, the Fifth Circuit applied the Supreme Court's decision in *Energy Reserves* in a case involving a class of lessees who argued that the State of Mississippi violated the Contracts Clause when it attempted to modify laws governing their lease payments for sixteenth-section land which pre-dated Mississippi's Constitution of 1890. The plaintiffs were assignees of sixteenth-section leases originally entered into before the Constitution of 1890. These leases were "renewable forever" and the payments by the end of the 20th century were only pennies per year. The State concluded that these nominal lease payments amounted to a donation of public lands to private citizens which expressly violated the Constitution of 1890. The Fifth Circuit concluded that since the subject leases were entered into before the Constitution of 1890, the State's attempt to unilaterally modify the leases violated the Contracts Clause of the U.S. Constitution.

It is from the decision in *Lipscomb* that this court will draw the applicable standards in ruling upon a Contract Clause claim.

Although Article 1, section 10 of the U.S. Constitution states that "No State shall ... pass any ... Law impairing the Obligation of Contracts," "[t]he Supreme Court has emphasized ... that the

---

[1] Though the Complaint alleges that the voiding of the contract also violated Art. 3, § 16 of the Mississippi Constitution of 1890, the parties do not discuss this claim specifically in their briefs. The court will therefore treat this particular claim as abandoned and moot.

absolute language of the Contract Clause does not create an absolute prohibition; a State must be given some accommodation in passing laws 'to safeguard the vital interests of its people.'" *Lispscomb*, 269 F.3d at 503-04 (citing *Energy Resources*, 459 U.S. at 410).

In determining whether a State violated the Contract Clause, the Supreme Court and the Fifth Circuit set out three basic elements: (1) whether the State has substantially impaired a contractual relationship; (2) if so, whether the State's substantial impairment is justified by a significant and legitimate public purpose; and (3) if so, whether the impairment was reasonable and necessary.

With regard to the first element, "[t]he threshold inquiry is whether the state law has, in fact, operated a substantial impairment of a contractual relationship." *Lipscomb*, 269 F.3d at 504. When considering whether the impairment is substantial, "the court should consider the expectations of the parties with respect to changes in the law." *Id.* (citing *Chrysler Corp. v. Kolosso Auto Sales, Inc.*, 148 F.3d 892, 895 (7th Cir. 1998)). The court is also to "consider whether the industry the complaining party has entered has been regulated in the past," since "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." *Energy Reserves*, 459 U.S. at 411.

The plaintiffs argue that the City's voiding of their contract was the ultimate in substantial impairment. The City counters that it had the legal right to do so pursuant to Mississippi common law and Miss. Code Ann. § 31-7-13(n)(i).

The court concludes that given that the law of Mississippi confined a the contracting municipal board to binding the City for 24 months or less, allowing a successor board to cancel or ratify the contract, and given that this law pre-dated entry into the subject contract, the plaintiffs cannot meet their burden in establishing the first element of the Contract Clause test. In other words,

11

pursuant to *Energy Reserves* and *Lispcomb*, the court concludes that the successor board's cancellation of the subject contract was not a substantial impairment given that the contracting board did not have the authority to permanently bind the City to a waterworks maintenance contract for a term in excess of 24 months.

As to the second element, "[a] State can only justify a substantial impairment of contracts with a 'significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem.'" *Lipscomb*, 209 F.3d at 504 (citing *Energy Reserves*, 459 U.S. at 411-12). "'[T]he elimination of unforeseen windfall profits' is a legitimate state interest sufficient to justify state impairment of contracts." *Id*.

The court concludes that even if it were determined that cancellation of the contract was in fact a substantial impairment under the Contracts Clause analysis, the City's stated reason for cancellation remedied a public economic problem which would have eliminated unforeseen windfall profits to ECO and/or SWWC; namely, that the City determined it could take over the operations themselves, thereby, presumably, making it cheaper for the City to maintain its waterworks system.

The third element of the Contracts Clause analysis is, if the impairment to the contract was substantial, and if the State presents a legitimate justification for the impairment, the court must then determine "whether the impairment is reasonable and necessary." *Lipscomb*, 269 F.3d at 505. In determining whether the impairment by the State was reasonable and necessary, the court must conduct a two-part inquiry: (1) did the contract surrender an essential attribute of the State's sovereignty; and (2) if not, was the impairment reasonable and necessary without giving complete deference to the legislature's judgment. *Lipscomb*, 269 F.3d at 505.

Having considered the parties' arguments, the court concludes that even if it were determined

12

that the cancellation of the contract constituted a "substantial impairment" and was not justified by a legitimate public purpose, the continuance of the contract against the wishes of the successor municipal board would have violated the board's sovereignty as provided by Mississippi common law and Miss. Code Ann. § 31-7-13(n)(i).

Accordingly, the court concludes that the plaintiffs' § 1983 claims for violation of their rights given by the Contracts Clause fails as a matter of law.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the City of Horn Lake's motion for summary judgment [27] should be granted, while Eco Resources, Inc. and SWWC Services, Inc.'s cross-motion for summary judgment [33] should be denied. Thus, all of the plaintiffs' claims should be dismissed with prejudice. Accordingly, a Final Judgment shall issue forthwith,

THIS DAY of June 11, 2009.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE